### In re PORTINGALL'S WILL.

*(Supreme Court, General Term, Second Department. July 2, 1891.)*

EXEOUTION OF WILL—UNDUE INFLUENCE—EVIDENCE.

Testatrix was about to sign a will in the presence of one W., who objected thereto, on the ground of undue influence being exercised over her by a Catholic priest, who was present, and with whom W. had an altercation; after which W. forcibly took the will from testatrix's hands, and tore it up. Testatrix was at once removed from W.'s house, and the next day executed a will, like in its terms to the one destroyed, declaring, in the presence of her physician and witnesses, that the will was as she wished to have it, and denied all influence over her by the priest. *Held,* that the evidence was insufficient to sustain a charge of undue influence exerted over testatrix in the execution of the will.

Appeal from surrogate's court, Kings county.

Proceedings for the probate of the will of Julia Portingall, deceased, propounded by Alice Tomb, who was named therein guardian of testatrix's infant children. Probate was resisted by John Wallace, who had been appointed such guardian by a prior will. From an order of the surrogate admitting the second will, said contestant, Wallace, appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Dailey & Bell,* (*James D. Bell,* of counsel,) for appellant. *M. F. McGoldrich,* for respondent.

BARNARD, P. J. Julia Portingall died in Brooklyn on the 26th of October, 1889, and left the will offered for probate, which was executed on the 10th of October, 1889. She had executed a previous will on August 29, 1889. She left three minor children, and both wills gave the property to her children. The only material change is in the testatrix guardian of the children. The first will named John Wallace as guardian, and the second Mrs. Alice Tomb. The testatrix was a Catholic. Her husband was a Protestant in his life-time, and he had been dead about six years before the will was made. The evidence is quite voluminous, but there is not the slightest proof of lack of capacity in the testatrix. The great issue upon the probate was whether the will was executed under undue influence. Was the alteration of the guardian made by a refusal to administer the rites of the Catholic Church unless the change was made? Upon this point the evidence sustains the finding of the surrogate that it was not so made. Religious feeling entered into the change without doubt. The testatrix on the 9th of October, 1889, was living in the house of Mr. Wallace. On that day a Catholic priest, Father Nash, accompanied by a lawyer, Mr. McGoldrick, went to the Wallace house, and after some hesitation were admitted. The testatrix told McGoldrick that she wished to change her will, and used expressions that the change was according to the wish of Father Nash. She was told that any will must be of her own free will, and she then requested the will to be drawn. It was drawn and read over, and she said it was satisfactory. The will was read over to Mr. Wallace, and he noticed that it named no executors. A new will was drawn, with the executors in the former will inserted. It was again read over, and the testatrix said it was satisfactory. Wallace objected, and the priest was called in, and an unpleasant scene occurred. The priest said Wallace was not a Catholic, and Wallace replied that he was not. The testatrix requested permission to sign the paper, and, as she took the pen in her hand, Wallace reached over and forcibly took the will from before her, and tore it up. The testatrix was removed from Wallace's to the house of a Mrs. Campbell. The

next day a new will, like in its terms to the destroyed will, was executed. There were three witnesses to it. The testatrix stated that what she had said the day before about Father Nash was by reason of threats made by Mr. Wallace, and that she wanted to execute this will. This remark was made in the presence of her attending physician, and subsequently to the witnesses to the will. She explained her motive for the change in guardianship, and denied all influence over her by Father Nash. The proof of the transaction at the Wallace house is very contradictory. It is quite convincing, however, upon a careful reading, that there was too much anger to accept the testimony without scrutiny, and that upon the whole evidence there was no undue influence. The testatrix heard objections to the will, but she was firm in her resolution to execute the paper. Upon the execution of the will there is no conflict. The will was the act of a free and capable testatrix. She gave the reason for her will, and for the change in it, and stated that she had been afraid, not of the priest, but of the guardian of her children named in the first will on the 9th of October, 1889. The decree of the surrogate should be therefore affirmed, with costs. All concur.